## INTERSTATE COMMERCE COMMISSION v. CLAYTON.

### No. 2440.

Circuit Court of Appeals, Tenth Circuit.
April 30, 1942.

---

Francis A. Silver, of Washington, D. C., (Dan B. Shields, U. S. Atty., of Salt Lake City, Utah, Geo. H. English, of Jefferson City, Mo., and Hallan Huffman, and George W. Howard, both of Washington, D. C., on the brief), for appellant.

Horace J. Knowlton, of Salt Lake City, Utah, for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

The Interstate Commerce Commission brought this action against Clayton to enjoin him from holding himself out as a common carrier or contract carrier in interstate commerce for compensation without complying with the requirements of Part II of the Interstate Commerce Act, 49 U.S.C. A. §§ 301–327. The trial court denied the injunction. The Interstate Commerce Commission has appealed.

The facts are these: Clayton resides at Ucon, Idaho. He maintains a small coal yard at his home, where he normally keeps on hand about ten tons or a truckload of coal. He has customers in Ucon and in the neighboring towns of Rigby, Coleman, Idaho Falls, Grant, and Iona, Idaho. He devotes from one-third to one-half of his time in selling coal and is the largest dealer in his community. He purchases coal from the Lone Pine Tree Mine at Rains, Utah, for $3 per ton and transports it by automobile truck on the public highways to his home at Ucon. He pays for the coal with his own funds. He sells both for cash and on credit. He solicits orders for coal so transported, both before he transports it from the mine to his home and after he has transported it to his home. He does not purchase coal at the Lone Pine Tree Mine and transport it to fulfill any specific or particular order. Many orders are taken by his wife at Ucon while he is engaged in going from his home to the mine and returning with a truckload of coal. He sells coal to any person in the vicinity of Ucon who desires to purchase at the price he offers.

When Clayton returns to Ucon with a truckload of coal, he weighs the load, unloads in the customer's bin the amount he estimates will fill a particular order, again weighs the truck and the remainder of the load of coal, and continues the process until his orders are filled. If any part of the truckload of coal remains, he stores it in his yard. From time to time he fills orders from coal stored in the yard.

During the periods from December 1, 1939, to March 1, 1940, and from November 1, 1940, to March 14, 1941, he so purchased, transported, sold, and delivered at Ucon and in the vicinity a substantial amount of coal for which he received $8.50 per ton. He charged a uniform price in the several towns. The price of $8.50 is determined by competitive conditions.

The coal costs him $3 per ton and the cost of transportation, including depreciation, gas, oil, tires, and repairs is approximately $2.55 per ton.

He has no certificate of public convenience and necessity to transport coal from Rains, Utah, to Ucon, Idaho.

The court found the foregoing facts and concluded that Clayton was a private carrier.

Sec. 203(a) of the Interstate Commerce Act, as amended 49 U.S.C.A. § 303(a) in part provides:

"(14) The term 'common carrier by motor vehicle' means any person which holds itself out to the general public to engage in the transportation by motor vehicle in interstate or foreign commerce of passengers or property or any class or classes thereof for compensation, whether over regular or irregular routes, except transportation by motor vehicle by an express company to the extent that such transportation has heretofore been subject to Part I [chapter 1 of this title], to which

extent such transportation shall continue to be considered to be and shall be regulated as transportation subject to Part I [chapter 1 of this title].

"(15) The term 'contract carrier by motor vehicle' means any person which, under individual contracts or agreements, engages in the transportation (other than transportation referred to in paragraph (14) and the exception therein) by motor vehicle of passengers or property in interstate or foreign commerce for compensation. * * *

"(17) The term 'private carrier of property by motor vehicle' means any person not included in the terms 'common carrier by motor vehicle' or 'contract carrier by motor vehicle', who or which transports in interstate or foreign commerce by motor vehicle property of which such person is the owner, lessee, or bailee, when such transportation is for the purpose of sale, lease, rent, or bailment, or in furtherance of any commercial enterprise."

Clayton is engaged in the business of selling coal. He devotes one-third to one-half of his time to sales. He pays for the coal transported and owns it until he delivers it to a customer. He transports it for the purpose of sale. He does not buy and transport coal to fulfill any specific or particular prior order. He hauls sufficient coal to take care of what he estimates will supply his customers' requirements, but not on a prior order basis. Many times, from a truckload of coal, he fills orders received by his wife while he is engaged in transporting such coal. From coal on hand, the transportation of which to his home has been completed, he frequently fills orders received subsequent to such transportation.

He always transports the coal to his home where he maintains a small coal yard and fills orders as received from the truck and coal stored in his yard. He makes no differentiation in price between coal delivered at Ucon and at the other nearby towns, although delivery to the other towns entails a longer haul. The price for which he sells is determined by competitive conditions.

He does not hold himself out to the general public to haul coal for compensation. He does not haul coal for compensation to fill particular orders or under individual contracts or agreements. He has indulged in no subterfuge or design to avoid the requirements of Part II of the Interstate Commerce Act. The cost of the coal and transportation is $5.57 per ton. He sells it for $8.50 per ton. Thus he realizes a profit, both from the transportation and from the sale of the coal, the margin of profit being large enough to cover both.

We conclude he is engaged in the bona fide coal business; that he transports coal of which he is the owner for the purpose of subsequent sale and in furtherance of a commercial enterprise; and that the trial court was warranted in finding that he is a private carrier.[1]

The judgment is affirmed.

---

[1] See D. L. Wartena, Inc., Common Carrier Application, 4 M.C.C. 619, 622; Gallup Mercantile Company Common Carrier Application, 14 M.C.C. 23; Murphy Transfer Company Common Carrier Application, 9 M.C.C. 361; Murphy Common Carrier Application, 21 M.C.C. 54; Swanson Contract Carrier Application, 12 M.C.C. 516; Spanhake Common Carrier Application, 21 M.C.C. 258.