## INTERSTATE COMMERCE COMMISSION v. JAMESTOWN STERLING CORPORATION.

### Civ. No. 1523.

District Court, W. D. New York.

Dec. 28, 1945.

122

George L. Grobe, U. S. Atty., and Eugene J. Donnelly, Asst. U. S. Atty., both of Buffalo, N. Y., and George H. English, Gregory U. Harmon, and James Y. Piper, Attorneys, Bureau of Motor Carriers, Interstate Commerce Commission, all of Washington, D.C., for plaintiff.

Rogerson, Clary & Hewes, of Jamestown, N. Y. (J. Russell Rogerson, of Jamestown, N. Y., of counsel), for defendant.

KNIGHT, District Judge.

This action for an injunction is brought under section 222(b), Part II, of the Interstate Commerce Act, 49 U.S.C.A. § 322 (b). The complaint alleges that defendant has not secured a certificate of public convenience and necessity, has not filed tariff rates as a common carrier by motor vehicle or a schedule of minimum charges as a contract carrier, and has not filed evidence of insurance for the protection of the public. The answer admits that defendant has transported furniture by motor vehicle in interstate commerce but alleges the furniture is owned by defendant until delivered to the consignee's warehouse, and by such that defendant was a private carrier and not subject to plaintiff's regulation. We have previously considered an aspect of this in I. C. C. v. Pickard, D.C., 42 F.Supp. 351.

Defendant manufactures furniture and sells only in carload (or truckload) lots. Part is shipped, as much as he can carry, by a common carrier named Anderson who has only one tractor and trailer. This is shipped, "F.O.B. Jamestown" and Anderson collects his transportation charges from the customer. Between 20 and 25 percent is. shipped by rail, consisting mostly of that which is to be shipped for a considerable distance. The balance is shipped in company-owned trucks. In 1944, the defendant had gross sales of $940,519.13, and of this, $19,303.16 represented receipts from transportation of goods in company trucks. The company owns two trucks and three trailers. When so shipping, goods are sold, "F.O.B. your (customer's) warehouse" and cost of delivery is added to the sale price. This cost of delivery is computed upon the same rates. as those used by Anderson. The company has no facilities to garage, repair or service trucks and that is done elsewhere. Three drivers are employed by the defendant. There was testimony that Anderson had rights in Ohio, New York, Pennsylvania, Maryland, New Jersey, Massachusetts, Connecticut and Rhode Island, and that defendant used its own trucks when Anderson was not available, for longer hauls, and for shipments into Michigan, Indiana and West Virginia (where Anderson had no rights).

Goods were shipped with two percent discount upon thirty day payment. There was testimony that this two percent was deducted from the total charge (furniture price plus transportation) in most instances, but plaintiff's exhibits show instances where the deduction was from furniture price only.

No direct proof was put in by plaintiff, except for certain stipulated facts.

Since the definitions of the various kinds of carriers "common", "contract" and "private" are fixed by the statute, I. C. Act, 49 U.S.C.A. § 303, the question of determining as to which class a carrier belongs must be determined by these definitions. It is apparent from the definitions that where transportation is conducted for a profit it was the intention of the statute to regulate such transportation. Such regulation naturally applies to common, contract carriers and not to "private" carrier. It is apparent that it is often difficult to distinguish the different types of carriers, and it is apparent that applicability of the provisions of section 303 depends upon the particular facts in each instance. In L. A. Woitishek Common Carrier Application, 42 M.C.C. 193, the question was what the status of a transporter by motor vehicle who is engaged, not only in supplying transportation for compensation, but also is engaged in some non-carrier enterprise, such as manufacturing in connection with which the transportation is performed. The Commission pointed out that there were two lines of cases on the subject and the test is to be found in ascribing a private carrier status to one whose transportation is merely an incident to his

non-carrier business when such non-carrier activity is his primary business, or whether, on the other hand, the ultimate test is to be made by ascribing a common (or contract) carrier status to one who performs such transportation for compensation identifiable as being received for such transportation, irrespective of whether such compensated transportation was or was not incidental to any other business. The transportation by this defendant was incidental to its manufacturing business, and the amount of compensation for transportation is identifiable.

The Commission in the case cited concluded that neither of the above-mentioned tests was conclusive, but that the feature of the primary business must always be a basis for decision and could not be ignored in favor of the compensation test, but that both must be taken into consideration.

Numerous decisions of the Interstate Commerce Commission and of the courts have been cited by both of the parties. All are not in harmony, and in illustration, attention may be called to the following decisions: Carpenter Application, 2 M.C.C. 85; Congoleum-Nairn, Inc., 2 M.C.C. 237; Siler Common Carrier Application, 9 M.C.C. 719; Swanson Contract Carrier Application, 12 M.C.C. 16; Luckens Steel Co., 42 M.C.C. 672; Interstate Commerce Comm. v. Clayton, 10 Cir., 127 F.2d 967; A. W. Stickle Co. v. Interstate Commerce Comm., 10 Cir., 128 F.2d 155.

Certain features of the instant case are shown in each of these decisions, and it seems that the present case can be decided upon facts not in conflict with the majority views expressed in reported cases and in accordance with the purpose and interpretation of the Interstate Commerce Act. While the record discloses that the transportation by the defendant resulted in a loss for the year, the gravamen of the situation rests in the fixation of charges upon a rate allowed by the Interstate Commerce Commission. The rates to Anderson resulted in a profit. It may well be assumed that these rates were fixed, in part at least, upon a mileage basis. Defendant hauled to destinations more distant than did Anderson, but the rate charged by the defendant normally would have been based upon the increased mileage.

It seems, therefore, that this case must be decided adversely to the defendant, upon the ground that the charges for transportation were fixed by the rate charged by Anderson and not with regard to actual cost. Were these charges limited to the actual cost of transportation a different question might be presented.