**CALVINE MILLS, INC. and G & W Transfer Company, Inc., Plaintiffs,**

**v.**

**UNITED STATES of America and Interstate Commerce Commission, Defendants.**

**Civ. A. No. 1074-62.**

United States District Court
D. New Jersey.

July 26, 1963.

August W. Heckman, Jersey City, N. J., for plaintiffs Calvine Mills, Inc., and G & W Transfer Company, Inc.

Lee Loevinger, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., David M. Satz, Jr., U. S. Atty., Jerome Schwitzer, Asst. U. S. Atty., Newark, N. J., for the United States.

Robert W. Ginnane, Gen. Counsel, Thomas H. Ploss, Atty., Interstate Com-

merce Comm'n, Washington, D. C., for Interstate Commerce Commission.

Before McLAUGHLIN, Circuit Judge, and AUGELLI and SHAW, District Judges.

McLAUGHLIN, Circuit Judge.

The fundamental question in this case is whether in the operation involved, plaintiff G & W Transfer Company, Inc., has engaged in for-hire motor carriage with plaintiff Calvine Mills, Inc. participating therein, subject to regulation under Part II of the Interstate Commerce Act.

In 1958, G & W entered into a written lease with Calvine whereby it leased certain listed tractors and trailers to Calvine for a rental based on an attached schedule of rates. The vehicles were to be used by Calvine in the transportation of its property between North Carolina and/or New Jersey, Connecticut, Massachusetts and Rhode Island. Inter alia, Calvine was to furnish the drivers and pay their wages. The drivers were stated to be solely subject to Calvine. G & W agreed to provide public liability insurance coverage for the equipment during its use by Calvine. G & W holds no operating authority from the Commission.

On December 30, 1960, the Commission issued an investigative order under Section 204(c) of the Act, 49 U.S.C. § 304 (c) for the purpose of determining whether G & W in connection with its mentioned operation with Calvine, had been engaged in the transportation of property in interstate commerce for compensation as a common or contract carrier by motor vehicle in violation of the Act and whether Calvine in concert with G & W had participated in said violation. The issue was heard by a Commission Examiner who found that G & W's activities in connection with the Calvine lease did not constitute motor carrier operations under the Act and that Calvine in those particulars had not violated the Act. The Commission reversed the Examiner and on the facts found by the Examiner decided that G & W had engaged in illegal operations and that Calvine had participated in them. Rehearing was denied. It is agreed that plaintiffs have exhausted their administrative remedies.

The uncontradicted proofs before the Commission reveal as the Commission found in its report, 89 M.C.C. 252, 253:

"In actual practice, Calvine employs the driver, subject to G & W's right to pass upon his ability to handle the leased equipment, and, although it has not had occasion to do so, has the right to discharge him. Calvine prepares drivers' salary checks, pays their wages from its funds at a flat rate basis for each trip, and makes appropriate withholding deductions. Its representative does not know whether all drivers employed by Calvine were referred to it by G & W, but believes that some of them were. Calvine leases 10 tractors and 11 trailers which are stationed at, and dispatched from, G & W's Hickory garage. Calvine furnishes routing instructions to its dispatcher thereat. Approximately two of the leased units were not being utilized to handle its traffic at the time of hearing.

"Under a substantially similar equipment lease agreement with Custom-Craft Furniture, Inc., hereinafter called Custom-Craft, entered into on November 17, 1959, G & W moved furniture for that shipper from Hickory to points in Massachusetts and New York in a tractor and trailer unit listed in the G & W lease to Calvine. These operations were discontinued in 1959. G & W also admits that equipment assigned to Calvine was used for backhauls of grain, potatoes, and tobacco, on behalf of other shippers. Specific instances of the transportation of oats for Cargill, Inc., between November 27 and December 7, 1959, in.

the same equipment described in the lease between G & W and Calvine, often with the same drivers as those involved in the Calvine operation, are shown in the record. Further an unspecified number of units under G & W lease to Calvine were occasionally leased to a carrier not a party to this proceeding and utilized to transport, under that carrier's authority, oil for American Oil Company from Baltimore, Md., to Hickory. Calvine's representative disclaims specific knowledge of G & W's transportation of goods for other persons."

Plaintiffs' answer to the proof of its Custom-Craft operation with its Calvine equipment is merely " * * * that such work was on a trial basis and was discontinued in 1959." Not one word is mentioned about it being illegal and completely contrary to the entire theory of plaintiffs' claim to the Commission and to this court. Nor is there a suggestion that if, during the continuance of the Calvine lease, the Custom-Craft engagement or one similar was found to be practical the G & W Calvine assigned tractors and trailers would not again so function. The G & W transportation of oats, grain, tobacco and potatoes is not denied. Plaintiffs' answer to that proof is that it is irrelevant because " * * * all these movements were performed more than three years ago and having ceased, are moot." Actually the fact presented by the evidence of G & W's backhaul of the named exempt agricultural commodities is the all important one of G & W operating some of its Calvine "exclusive possession" equipment for its own commercial purposes not beneficial to Calvine.

With regard to G & W's practice of occasionally leasing to a carrier some of its Calvine units which were used by that carrier under its authority to transport oil for an oil company from Baltimore, Maryland to Hickory, North Carolina, the only reference to this by plaintiffs is that those movements were "legal". It is noteworthy that, according to a witness on behalf of Calvine, the latter had no knowledge of that transportation. The transcript reveals that when the equipment assigned to Calvine is not in use it is in the possession of G & W, which concern maintains it.

Plaintiffs' main contention addressed to the above proven instances of G & W use for its own purposes of its trucks and tractors ostensibly turned over to Calvine for the latter's operation thereof as a private carrier, is again that those movements were in the past. And once more there is no admission that any of them were illegal or that they, or like projects, will not be taken on again by G & W should conditions warrant.

On the question of the employment of the drivers who manned the tractors and trailers listed on the Calvine lease, there is testimony that the drivers were used for the transportation outside the lease above mentioned and without the knowledge of Calvine. The engagement of the drivers by Calvine depended upon the recommendation of the president of G & W. That recommendation in turn was connected with a driver passing a conclusive test of fitness. There is evidence that Calvine does not consider those drivers its employees except when they are actually driving for it. It also appears that, following the dropping of Calvine's practice of deducting drivers' salaries from its lease payment, with Calvine thereafter paying the drivers without those deductions, the G & W rates were lowered, contrary to the lease rate.

Calvine's active sharing in this entire project is manifest not only from the above mentioned detail but in the testimony of its assistant to the president of the company who said "this trucking operation is extremely vital to our particular textile business." Along the same line, the bookkeeper dispatcher for the transportation involved, who is stationed at Hickory, the headquarters of G & W, is a joint employee of Calvine and G & W.

As we see it the Commission has made out a case from which it was en-

titled to conclude that G & W Transfer Company, Inc. had engaged in for-hire motor carriage subject to Part II of the Act without Commission authority and that Calvine Mills, Inc. participated therein. Initially, in the hearing before the Commission, there was a presumption that the leasing of the G & W equipment by Calvine resulted in for-hire transportation by G & W. H. B. Church Truck Service Co., 27 M.C.C. 191, 195, cited with approval by the United States Supreme Court in United States v. Drum, 368 U.S. 370, 382, 82 S.Ct. 408, 7 L.Ed. 2d 360 (1962). That presumption was never overcome by the proofs presented, for there was no showing made that Calvine had retained the exclusive right to control the operation. To the contrary, under the evidence we must agree with the Commission that "The conclusion is inescapable that regardless of the terms of the lease, the vehicles involved were not assigned to Calvine's exclusive use and possession, but reverted to G & W's control for use in other activities, and that in many instances the drivers maintained an economic relationship to this purported lessor by which they are dependent upon it for employment."

In addition to the proofs clearly establishing that Calvine did not possess exclusive control of the leased equipment, they also substantiate the Commission's finding that it was G & W, rather than Calvine, which significantly shouldered the financial burden of the transportation in this matter. The tractors and trailers were owned by G & W and their depreciation or loss was the latter's responsibility; the risk of higher prices as to fuel, repairs, maintenance, etc., was that of G & W, as was in a major degree the risk of idle vehicles and non-productive backhauls. From the above and all the other evidence before it the Commission held that " * * * the real service offered by G & W for Calvine and other shippers is, in substance, for-hire motor carriage subject to regulation under part II of the act." That judgment of the Commission is supported by the record and even if we disagreed we would have no right to substitute such view for that of the Commission. United States v. Drum, supra, 368 U.S. p. 386, 82 S.Ct. p. 416.

From our own review of the record we are satisfied that the decision of the Commission is within its statutory authority and that it is based upon adequate findings which are supported by substantial evidence. In reaching that determination we are fulfilling our function as a reviewing court in this type of action. United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 66 S. Ct. 687, 90 L.Ed. 821 (1945); Rochester Telephone Corporation v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147 (1939); Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260 (1934).

While it is true plaintiffs' illegal acts upon which the Commission order is based, occurred in the past, there is nothing to indicate that plaintiffs concede illegality as to any of them. There is the definite statement by plaintiffs that the outside use of Calvine assigned equipment by the carrier transporting its customer's oil was proper. And there is a letter in evidence from Custom-Craft Furniture, Inc. to the Commission which definitely points to expectation of renewal of its lease with G & W subject to business conditions. This situation upholds the Commission in its thought that it may well be confronted with the same type of problem from these plaintiffs in the future and should provide for it in accord with sound Commission practice. As Judge Goodrich said for the court in I. C. C. v. Barron Trucking Company, 276 F.2d 275, 276–277 (3 Cir., 1960):

"The corporation makes the familiar argument that since it has ceased to do that which the injunction prohibits it from doing, the injunction should be lifted. It is well established that the plea 'I have quit doing the forbidden thing' will not prevent the issuance of an injunction otherwise appropriate if there appears a likelihood of repetition of

the forbidden conduct.[2] The injunction against the corporation, therefore, will remain.

---

"[2]. See Securities and Exchange Commission v. Culpepper, 2 Cir., 1959, 270 F. 2d 241, 249–250 and cases cited therein."

Cf. Daily Maid, Inc.—Investigation of Operations, 68 M.C.C. 339, 341 (1956);

Galveston Truck Line Corp. v. Ada Motor Lines, Inc., 73 M.C.C. 617, 629–630 (1957); Williams—Investigation of Operations, 83 M.C.C. 45, 47 (1960).

Our findings of fact and conclusions of law are sufficiently stated in this opinion and therefore will not again be detailed separately.

The complaint will be dismissed with prejudice and for nothing holden.