**SHELBY BISCUIT COMPANY**

v.

**UNITED STATES of America and Interstate Commerce Commission.**

**Civ. A. No. 68–H–488.**

United States District Court
S. D. Texas,
Houston Division.

March 5, 1969.

Fulbright, Crooker, Freeman, Bates & Jaworski, Richard L. McGraw, Houston, Tex., for Shelby Biscuit Co.

Morton L. Susman, U. S. Atty., and George R. Pain, Asst. U. S. Atty., Houston, Tex., and John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., for United States.

Fritz R. Kahn, Deputy Atty. Gen., Washington, D. C., for Interstate Commerce Commission.

Before JOHN R. BROWN, Circuit Judge, and CONNALLY and INGRAHAM, District Judges.

CONNALLY, District Judge.

This action is brought against the United States and the Interstate Commerce Commission, pursuant to the United States Code, Title 28, Sections 1336, 1398, and 2321–2325, and Title 49, Section 17(9), to enjoin, set aside and annul a certain Report and Order of the Interstate Commerce Commission issued on November 28, 1967, in Docket No. MC–C–2520, Shelby Biscuit Company, Investigation of Operations. Said Report concluded that plaintiff has been and is engaging in transportation, in interstate commerce, of sugar as a for-hire common or contract carrier by motor vehicle without appropriate authority, in violation of sections 206(a) or 209(a) of the Interstate Commerce Act, 49 U.S.C. §§ 306 (a) or 309(a), and requires plaintiff to cease and desist from conducting such unlawful transportation.

This case was before this Court in Shelby Biscuit Company v. United States, 255 F.Supp. 475 (1966), wherein it was remanded for Commission re-evaluation

in the light of the standards enunciated in Shannon v. United States, 219 F.Supp. 781 (W.D.Tex.1963), affirmed in Red Ball Motor Freight, Inc. v. Shannon, 377 U.S. 311, 84 S.Ct. 1260, 12 L.Ed.2d 341 (1964). It began in 1959 as an investigation instituted by an order of the Interstate Commerce Commission "into and concerning the motor carrier operations of Shelby Biscuit Company, a corporation, with a view of determining whether the Shelby Biscuit Company has been and is now engaging in the transportation of property in interstate or foreign commerce for compensation as a common or a contract carrier by motor vehicle, in violation of Sections 206(a) (1) or 209 (a) (1) of the Act . . . ". Upon remand, the Commission conducted further hearings and entered the Report and Order dated November 28, 1967, from which the plaintiff now appeals.

It is alleged by the plaintiff that the Report and Order of November 28, 1967, is unlawful and void in that the equivocal ultimate conclusion that Shelby Biscuit Company is either a common carrier *or* a contract carrier is too indefinite to satisfy the requirements of the Administrative Procedure Act or due process. Further, it is alleged that "there is no substantial evidence that Shelby Biscuit Company's sugar business is not a primary business."

Although Shelby Biscuit Company is charged with the performance of transportation in violation of either sections 206(a) or 209(a) of the Act, as was *Shannon*, supra this Court is of the view that the material issue of law presented is whether the challenged transportation is private, and thereby exempt from the requirements of the above sections, or for-hire motor carriage. Red Ball Motor Freight v. Shannon, supra.

██ The Interstate Commerce Act provides that it is unlawful for any person engaged in a business other than transportation to "transport property by motor vehicle in interstate or foreign commerce for business purposes unless such transportation is within the scope, and in furtherance, of a primary business enterprise (other than transportation) of such person." Title 49 U.S.C. § 303(c). Consequently, an ultimate conclusion that plaintiff's transportation, in interstate commerce, of sugar is in violation of sections 206(a) or 209(a) of the Act would be valid if the Commission's findings that such activities were not within the scope, and in furtherance of, a primary business enterprise (other than transportation) of the Shelby Biscuit Company are supported by substantial evidence. This view is sustained by the statutory definitions contained in sections 203(a) (14), 203(a) (15) and 203(a) (17) of the Act, as well as the language of section 203(c) of the Act, supra, which clearly establishes that the terms "common carrier by motor vehicle", "contract carrier by motor vehicle" and "private carrier of property by motor vehicle" are mutually exclusive.

The basic facts in this proceeding are relatively uncomplicated and undisputed. It is the legal effect of the undisputed facts upon which Shelby Biscuit Company and the Commission differ. The following basic facts adduced from the several hearings before the Commission and summarized in defendant's brief are as follows:

Shelby Biscuit Company, hereinafter called Shelby, is a distributor of cookies in Houston, where it is domiciled, and other nearby Texas points. The cookies are sold by about twenty salesmen, principally to retail grocers. Shelby does not itself bake such cookies but purchases them, packaged and labeled according to Shelby's specifications. Shelby maintains a warehouse, but it tries to keep its stock of cookies at a minimum.

Shelby purchases its cookies mainly from three suppliers—Ripon Foods, Inc., Ripon, Wisconsin; Johnson Biscuit Company, Sioux City, Iowa; and Elliott Cookie Company, St. Louis, Missouri. (It formerly bought from Mama Cookie Bakeries, Inc., Chicago, Illinois.) Orders are placed with the bakeries about two weeks in advance

of the anticipated delivery dates, and such orders are placed with each of the three suppliers every ten days or two weeks. Shelby operates a tractor-trailor truck to pick up some, if not all, of its orders of cookies, and, whenever it does so, it is paid allowances by the bakeries for such transportation. These allowances in each instance cover Shelby's round-trip costs in operating its truck to and from the bakeries.

Shelby, however, at no time sends an empty truck to the bakeries. With respect to Johnson and Elliott, Shelby solicits sugar orders at the time it places its cookie orders. As to Ripon, pursuant to a standing arrangement, Shelby simply delivers a truckload of sugar whenever it picks up a shipment of cookies. In either event, in advance to dispatching its truck Shelby buys a load of sugar from a local refinery, Imperial Sugar Company, and hauls it directly to the bakeries.

When dealing with Johnson or Elliott, Shelby agrees upon the price at which it will sell the sugar in advance of its purchase of the sugar. Johnson normally pays Shelby the refinery or "base" price plus a $.60 per hundredweight transportation charge, analogous to a "prepay". Elliott pays Shelby the prevailing price for sugar in St. Louis, but, in turn, such price reflects the sum of the refinery price plus a transportation charge or "prepay". Ripon pays Shelby the prevailing price for sugar in the Ripon area at the time that Shelby delivers the sugar, but in turn, such price also reflects the sum of the refinery price plus a transportation charge or "prepay".

Shelby admits that it performs no service with respect to the sugar it handles, other than transportation, and its sugar customers look to it only as a transporter of sugar. Unlike ordinary sugar jobbers or distributors, Shelby buys sugar only in the truckload lots in which it sells it, and, unlike ordinary sugar jobbers or distributors, Shelby warehouses none of the sugar which it sells. It employs no salesmen to sell sugar, and its only advertising as a sugar dealer is on the vehicle in which it transports the sugar.

At the conclusion of the hearings before the Commission, Shelby Biscuit Company's sugar hauling activities were held not to be exempt under section 203 (c) of the Act as "transportation * * within the scope, and in furtherance, of a primary enterprise * * *."

 "Section 203(c) of the Act was designed explicitly to authorize the ICC to eliminate transportation which, though carried on in the guise of private carriage, was in effect for-hire carriage, and thus might lawfully be carried on only by an authorized common or contract carrier." Red Ball Motor Freight v. Shannon, 377 U.S. 311, 313, 84 S.Ct. 1260, 12 L.Ed.2d 341. Such was a codification of the "primary business" test established in Lenoir Chair Co., 51 M.C.C. 65, aff'd, sub. nom. Brooks Transportation Co. v. United States, 93 F.Supp. 517, aff'd 340 U.S. 925, 71 S.Ct. 501, 95 L.Ed. 668 (1951), which was as follows:

"If the facts establish that the primary business of an operator is the supplying of transportation for compensation then the carrier's status is established though the operator may be the owner, at the time, of the goods transported and may be transporting them for the purpose of sale. * * * If, on the other hand, the primary business of an operator is found to be manufacturing or some other noncarrier commercial enterprise, then it must be determined whether the motor operations are in bona fide furtherance of the primary business or whether they are conducted as a related or secondary enterprise with the purpose of profiting from the transportation performed. In our opinion, they cannot be both." 51 M.C.C., at 75.

One type of activity that section 203 (c) was designed to eliminate involves nonauthorized carriers in the transportation business who resort to transparent

buy-and-sell devices to evade ICC regulations. A typical buy-and-sell agreement is one under which the carrier buys property at a shipping point, transports it to a delivery point and there sells it to the real purchaser, the profit to the carrier amounting to the price of the transportation between the two points. Red Ball Motor Freight v. Shannon, supra. It is this type of "psuedo private" carriage that the Commission has determined Shelby Biscuit Company is engaged in.

The Supreme Court in Red Ball Motor Freight v. Shannon, supra, listed criteria characteristic of the spurious buy-and-sell device as developed and applied by the ICC in applying the primary business standard. Among these are the large investment of assets or payroll in transportation operations; negotiating the sale of goods transported in advance of dispatching a truck to pick them up; direct delivery of the transported goods from the truck to the ultimate buyer rather than from the warehoused stocks; solicitation of the order by the supplier rather than the truck owner; and inclusion in the sales price of an amount to cover transportation costs.

While it is true that Shelby Biscuit Company does not have any large investment of assets or payroll in transportation operations other than that necessary to haul cookies from the bakeries to its warehouse, such would not be inconsistent with illegal backhauling operations. An element usually found in spurious by-and-sell arrangements, that of obtaining orders for the commodity (in this case, sugar) before purchasing it, was found to exist in Shelby's operations, and this Court is of the opinion that such is an important distinction between the operations conducted by *Shannon*, supra, and those of Shelby Biscuit Company. Also, it was found that none of the sugar was warehoused by Shelby but instead was directly delivered from the truck to the ultimate buyer. Further, the realization of a profit from all sugar hauling transactions would support a conclusion that the cost of transportation was at least covered by the sales price. The record even reveals that one of the bakeries viewed the markup it paid to plaintiff as a freight charge.

The aforementioned criteria for determining if one is in violation of section 203(c) of the Act was not intended by the Supreme Court in Red Ball Motor Freight, Inc. v. Shannon, supra, to be all inclusive. Here the record reveals that while Shelby Biscuit Company has been selling sugar for many years, its only customers have been bakeries from which Shelby purchased its cookies. Also the sales of sugar have always coincided with the trips to pick up cookies, thereby affording full utilization of the truck. Those facts combined with a total lack of any sales activities with regard to sugar lends support to the Commission's finding that the transportation of sugar by Shelby Biscuit Company has not been in furtherance of its primary business.

The scope of this Court's review of the Commission's orders is extremely limited. The proposition is too well settled to require citation of authority that a court may not set aside the order of a fact-finding administrative body, acting within the field of its designated powers, unless such order is illegal, capricious or unsupported by the evidence.

Upon consideration of the briefs of counsel and from a review of the whole record in this proceeding, the Court is of the opinion that the findings made by the Commission are amply supported by the evidence, that those findings are adequate to sustain the Commission's orders, and that the Commission acted within the scope of its authority and without unreasonable abuse of its discretion.

In accordance with the foregoing, the plaintiff is not entitled to the relief sought and the temporary restraining order should be dissolved.