Robert **ALLEN**, an individual, and Tripco, Inc., a corporation, Plaintiffs,

v.

**UNITED STATES** of America and Interstate Commerce Commission, Defendants.

No. 3814–C–T.

United States District Court
S. D. Florida,
Tampa Division.

Sept. 15, 1960.

Joseph E. Keller, Charles M. Meehan, Leonard A. Jaskiewicz, Chester A. Zyblut, Washington, D. C., Dow, Lohnes & Albertson, Washington, D. C., of counsel), for plaintiffs.

Wm. P. Rogers, U. S. Atty. Gen., E. Coleman Madsen, U. S. Atty., Miami, Fla., Robert F. Nunez, Asst. U. S. Atty., Tampa, Fla., Robert A. Bicks, Acting Asst. Atty. Gen., James H. Durkin, Department of Justice, Washington, D. C., Robert W. Ginnane, General Counsel, N. Neil Garson, Associate General Counsel, Carroll T. Prince, Jr., Office of General Counsel, Isaac K. Hay, Associate General Counsel, Interstate Commerce Commission, Washington, D. C., for defendants.

John M. Allison and Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., James L. Graham, Jr., Florida Railroad & Public Utilities Commission Tallahassee, Fla., William J. O'Brien, Jr., Peter T. Beardsley, Albert B. Rosenbaum, R. Edwin Brady, Roland Rice, James E. Wilson, Clarence D. Todd, Washington, D. C., for intervenors.

Before JONES, Circuit Judge, WHITEHURST and CARSWELL, District Judges.

CARSWELL, District Judge.

This Court was convened in accordance with the provisions of 28 U.S.C. §§ 2284 and 2325 on petition of plaintiffs for review of an order of the Interstate Commerce Commission.

The Commission's order requires plaintiffs, and others with whom they have common interest, to cease and desist certain practices which the Commission held to be violation of the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq.

Despite rather voluminous testimony preceding this juncture, the issues are simple, and the facts are undisputed. Stated briefly, the Commission found that the facts relating to plaintiffs' trucking operations placed them under the provisions of the Interstate Commerce Act governing "for hire" carriers, and did not place them, as plaintiffs urged, in the category of a private carrier as delineated in Section 203(a) (17) of the Act (49 U.S.C.A. § 303(a) (17)). In addition to this plaintiffs say that the Commission erred in failing to set forth its reason for denial of its petition for reconsideration, inviting particular attention to Section 8(b) of the Administrative Procedure Act (5 U.S.C.A. § 1007(b).

■■ Before reviewing the essential facts upon which the Commission's order was predicated, only general reference is deemed necessary to discern the scope and function of this Court in re-

viewing such order of the Interstate Commerce Commission. The scope of the Court's authority on review is too basic to belabor. Consistently, it has been held that the orders of the Commission should not be set aside, modified or disturbed on review by a Court if such orders lie within the scope of the Commission's statutory authority, if they are based upon adequate findings, and if they are supported by substantial evidence. Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260; Rochester Telephone Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147. The courts are not concerned with the correctness of the Commission's reasoning or with the consistency or inconsistency of decisions which it has rendered. Virginian Railway Co. v. United States, 272 U.S. 658, 47 S.Ct. 222, 71 L.Ed. 463; Western Paper Makers' Chemical Co. v. United States, 271 U.S. 268, 46 S.Ct. 500, 70 L.Ed. 941. Nor is the review to determine how the public interest will best be served. This is a function of the Commission and is made such by the terms of the statute. United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 66 S.Ct. 687, 90 L.Ed. 821. The findings of fact being, for the most part, upon stipulation, the conclusions drawn by the Commission, in the light of these facts must be examined to determine if any substantial errors were committed by the Commission.

Section 203(a) (17) of the Interstate Commerce Act (49 U.S.C.A. § 303(a) (17) defines a private carrier of property by motor vehicle as one which transports in interstate or foreign commerce by motor vehicle, property of which such person is the owner, lessee, or bailee, when such transportation is for the purpose of sale, lease, rent or bailment, or in furtherance of any commercial enterprise. These operations are exempt from the jurisdiction of the Interstate Commerce Commission. Plaintiffs contend that the facts of their operations fall within this particular exemption as private carrier. The examiner for the Com-

mission found that the operation was, in fact, tantamount to "for hire" operations. A division of three Commissioners affirmed substantially the examiner's findings and the full Commission reaffirmed both the examiner and the Division.

The following are the essential facts upon which the Interstate Commerce Commission based its findings: Plaintiff Allen, with some considerable experience in the trucking transportation field, executed certain written agreements called "contracts" with various shippers. Under these agreements Allen was required to lease trucks for the use of these shippers in getting their products to market in other states. Allen contends that he was, by virtue of these agreements, an employee of the shippers and that his actions thereafter could not be interpreted in any way except as that of an individual employee of one shipping his own goods or commodities. He selected the equipment to be secured for the transportation. He selected the driver personnel, and made schedules and routings. The agreements between Allen and the shippers provided that reports and administrative data be kept in the respective shipper's files. All of the contracts between the various shippers and Allen were substantially the same.

Southern Fruit Distributers, Inc., was named a respondent in the investigation of the Interstate Commerce Commission. Southern Fruit is a concern shipping outbound from Florida. There are other shippers shipping goods into Florida from points without the state. When Southern Fruit desired a shipment moved from Orlando to a distant point, one of its employees contacted Allen telling him the size of the shipment. Allen then contacted a truck leasing company, located suitable equipment and engaged a truck in the name of the shipper. Allen also engaged the services of a driver from the Florida Drivers Exchange. The drivers exchange idea was developed by Allen to supply drivers for the operation of his plan. A "contract" was signed by a driver in which he agreed, among other

things, to be hired as a part-time employee whose employment terminated upon the conclusion of the specific job for which he was hired. The driver normally received six cents a mile. When a shipment was ready, Allen added the name of the driver to the shipper's payroll list. The driver then picked up the truck and signed a lease form in the shipper's name. The driver received no compensation until the completion of the trip.

The truck leasing company agreed in its contract: (1) to provide for operational and maintenance expenses of equipment and to reimburse the shipper for any fuel oil and lubricants paid for by it when the vehicle was away from the truck rental company's garage, (2) to provide specified public liability and property damage insurance. The shipper, by contract, was required to have the vehicle operated safely and properly by a qualified driver, and to apprise the rental company of any accidents in which the vehicle was involved.

Allen established "destination agents" at certain frequently served points. These agents were generally service station operators who had parking facilities large enough to accommodate trucks. Allen, at his own expense, visited numerous persons in prospective destination areas in order to establish this system.

After a driver had delivered the shipment and received a receipt therefor, he contacted one of the agents, who took the keys to the truck and signed the truck rental lease for the purpose of acknowledging that the service had been completed. The driver sent a copy of the lease, the mileage report, driver's and shipping documents to Allen. Allen audited the report allotting 20 cents per mile to the rental company, 6 cents per mile to the driver, and 3 cents per mile for himself. At Allen's request, the shipper sent checks to Allen, who, in turn, made distribution. Allen paid one cent out of the three cents he received to the driver's exchange. The destination agent received $2.50, which was paid by the driver. The outbound shipper did not know the shipment had been delivered until Allen sent his report, which was several days later.

It is perhaps significant that there have been few, if any, trucks returned to Florida without a load. In some cases the return load was arranged by Allen prior to the time the trucks departed from the Florida area. In other cases the destination agents found shippers to send their commodities back to the Florida area.

Southern Fruit stated that it would not be feasible for them to enter into this plan if it had to pay for the return of the equipment. In nine out of ten cases the same drivers returned in the same equipment. The northern shippers have the same or similar contracts with Allen as Southern Fruit.

There have been approximately 750 outbound shipments in a two and a half year period. The destination agent sometimes inspected the equipment prior to its return movement. The inspections were not conducted in accordance with the Commission's safety regulations, and no systematic records were maintained. The shippers themselves were responsible for their own cargo insurance, but, in fact, Allen arranged through certain insurance agents for issuance of cargo insurance policies. The policies were issued in the names of the shippers, but Allen was billed for the premiums and later reimbursed by the shippers.

This, then, was the arrangement between Allen and the shippers, set forth here rather fully since the conclusions drawn therefrom by the Commission present the main, and quite compact, issue for review. The Commission held this to be "for hire" operation subjecting it to its regulatory authority. Was this a reasonable conclusion to be drawn from the facts?

Allen urges that the operation was private, in concept and practice, that he was a mere employee of the shippers, a traffic consultant who "recommended" and "coordinated" the shipments, drivers and equipment, and he stresses the point

that only goods of his employers were shipped and that private shippers are not prohibited from leasing equipment and hauling their own products.

It is the substance, not the form, of the operation which is vital. See Georgia Truck System, Inc. v. Interstate Commerce Commission, 5 Cir., 123 F.2d 210, 212. There the Georgia Truck System entered into written agreements with eighteen shipping companies to rent trucks to these companies at their own request. The court found that although the relationship to some extent partook the form of a renting or hiring operation, actually it was a device or subterfuge behind which the company carried on a transportation business in violation of the Interstate Commerce Act. The court emphasized that although the contracts were carefully drawn to give color to the claim of being a renting business, the court must look at the contracts in the light of the construction accorded them by the parties. The court there stated that the "scheme as a whole is a mere subterfuge, an unpermitted evasion, not a real avoidance of the provisions of the law."

Allen was clearly the common denominator, all organizational threads running to him. He had virtually identical "contracts" with the various shippers, quite reasonably construed as brokerage agreements despite the stylized dubbing of "employment contracts". He not only "recommended" drivers, he hired them. At his own expense he hired the destination agents, but he called them agents of the leasing companies. Upon arrival at the destination, however, the employment of the driver, and the lease of the truck suddenly expired and the destination agent, ostensibly on his own, somehow found a return load from a northern shipper, who, significantly, also had a "contract" with Allen as an "employee". The same truck and the same driver were "hired" by the northern shipper with the aid of the destination agent, and the laden truck returned to Florida.

■ The case then turns on a question of control. In order to constitute private transportation, when equipment is supplied by a lessor, the shipper must have the exclusive right to direct and control the vehicle, as well as the driver. See Interstate Commerce Commission v. Gannoe et al., D.C., 100 F.Supp. 790, and United States v. Steffke, D.C., 36 F. Supp. 257.

■ Plaintiffs' contention is that since Allen was an "employee" of the various shippers, that he exercised the requisite direction and control on behalf of the shippers. In view of this court's agreement with the finding that a mere "paper agency" was created by virtue of the Allen-Shipper contracts, the direction and control by Allen does not serve to substantiate the claim that the transportation was private. The shipper exercised little, if any, control over the vehicle or driver. The assertion that the shippers directed the place of delivery carries no weight to support the conclusion that the transportation was private, since in transportation for hire, the shippers must always, of course, instruct the carriers where to deliver the load. The drivers were instructed to contact the leasing companies, in case of trouble. The leasing companies gave the drivers expense money to be used during the trip. The shipper reimbursed (through Allen) the leasing companies, along with mileage payments.

There is no substantial evidence that the shipper did anything other than inform Allen of the need for the transportation and the destination of the products. Upon completion of the service, the shipper made payment.

There is no error in the Commission's determination that the shipper did not direct or control the accomplished transportation, nor in the conclusion that the shippers were not assuming a private carrier's responsibility to the public.

This Court finds no reason to disturb the findings of fact and conclusions drawn by the Interstate Commerce Commission, in its determination that the plaintiffs in this action, and the parties respondent in the investigation were en-

gaged in transportation for hire in violation of law.

■ The other contention by the plaintiffs relates to administrative procedure. They say that the Commission's order of January 7, 1960, denying plaintiffs' petition for reconsideration was not in accordance with the Administrative Procedure Act, Section 8(b) (5 U.S.C.A. § 1007(b). The pertinent portion states " * * * all decisions (including initial, recommended, or tentative decisions) shall become part of the record and include a statement of (1) findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law, or discretion presented on the record * * * ".

The Commission's order denying petition for reconsideration stated that " * * * the findings of Division 1 are in accordance with the evidence and the applicable law, and no sufficient cause appears for reopening the proceeding for reconsideration or for oral argument." Plaintiffs contend that this order fails to apprize them of any basis for denial of their petition for reconsideration.

This court need only hold that the record found first by the examiner, then by Division 1 of the Commission, and the transcript of the proceedings most certainly shows that the plaintiffs were apprized of the basis of the Commission's findings, based on the evidence and the applicable law as contained in the findings and conclusion. The reference by the Commission in its order back to the very full and detailed record of the decisions and the reasons therefor was in accordance with the Administrative Procedure Act. The denial of the petition for rehearing patently was based on the same facts and reasoning as the original order of the Commission. For the Commission to reiterate all the facts, all its prior findings and the law applicable thereto when its reasons for denial of rehearing are the same as its reason for making its decision at the outset, would be a useless and wasteful process. See Carolina Scenic Coach Lines v. United

States et al., D.C., 59 F.Supp. 336, affirmed 326 U.S. 680, 66 S.Ct. 37, 90 L. Ed. 398.

For the foregoing reasons the order of the Commission is affirmed and decree will be entered this date accordingly.