SHIPPERS COOPERATIVE, INC., a Corporation, and Pierson-Corn, Inc., a Corporation, Appellants,

v.

INTERSTATE COMMERCE COMMISSION, Appellee.

No. 17761.

United States Court of Appeals
Ninth Circuit.

Oct. 3, 1962.

Phil Jacobson, Los Angeles, Cal., for appellant.

Bernard A. Gould, Interstate Commerce Commission, Washington, D. C., and William L. Harrison, Regional Attorney, Bureau of Inquiry & Compliance, Interstate Commerce Commission, San Francisco, Cal., for appellee.

Before CHAMBERS and BARNES, Circuit Judges, and ROSS, District Judge.

BARNES, Circuit Judge.

This is an appeal from an injunction granted by the United States District Court against defendant-appellants Shippers Co-operative, Inc. (hereinafter referred to as "Coop") and against Pierson-Corn, Inc. (hereinafter referred to as "Pierson-Corn"). The action was started by the filing of a complaint in which the plaintiff-appellee Interstate Commerce Commission (hereinafter referred to as "Commission"), under Part II of

the Interstate Commerce Act (hereinafter referred to as the "Act"), alleged that Coop had been and was transporting property for compensation in interstate commerce as a common or contract carrier without having been issued a certificate or permit by the Commission authorizing Coop to engage in such operations or business, and consequently, that defendant-Coop was in violation of § 206(a) or § 209(a) of the Act (49 U.S.C.A. §§ 306(a) and 309(a), respectively). Pierson-Corn was made a party defendant under 49 U.S.C.A. § 52; the Commission having alleged that Pierson-Corn had participated in the acts charged in the complaint and would be directly affected by any judgment entered by the court.

The case was tried to the court. The court found (1) that Coop had been and was transporting property by motor vehicle over public highways and in interstate commerce for compensation as a contract carrier in violation of § 209(a) of the Act; and (2) that Pierson-Corn had been and was participating in the violation. The court entered a judgment enjoining both Coop and Pierson-Corn. Execution of the judgment was stayed pending this appeal.

The district court had jurisdiction under § 222(b) of the Act (49 U.S.C.A. § 322(b)). A timely notice of appeal was filed. This court, therefore, has jurisdiction to review the judgment entered below under the provisions of § 1291 of Title 28 United States Code.

The question presented in this appeal is whether the district court erred in holding Coop to be a contract carrier rather than a private carrier.

Although the parties agree that the facts are not in dispute, each prefers to state them in its own words. We summarize them as follows:

Coop is a California nonprofit corporation whose stockholder-members are manufacturers, and the distributors and the processors of the manufacturers.[1] Coop is, according to the stipulated facts, "an association of such members organized on a non-profit basis, for the purpose of securing the benefits of an expeditious movement of each member's merchandise in truck-load, or less than truck-loads, for each said member." Manufacturer-members with their principal place of business in Georgia, South Carolina, or Tennessee have distributors and processors in California; vis-a-vis, manufacturer-members with their principal place of business in California have distributors and processors in the states east of the Mississippi River.[2]

> "Shippers Coop is not engaged in manufacturing, processing, or marketing of merchandise in any manner whatever. Its only function is to perform a transportation service for the individual member." (Finding 11, Tr. 69.)

To perform this transportation service for its members, Coop has leased eighteen tractors and trailers which are operated under Coop's management and expense. Coop hired, supervised, and paid all its drivers; it maintained terminals in Los Angeles, California, and in Dalton, Georgia; the transporting between terminals is done in the vehicles managed by Coop. Coop does not own the merchandise it transports, and it requires the consignor to execute a bill of lading or receipt when it accepts merchandise to be transported and it requires a receipt from the consignee when the merchandise is delivered. Coop has published a schedule of rates and charges, and each shipper-member is assessed and pays for each of its shipments according to the published schedule.[3] Coop provides public liability and

---

1. The manufactured products are rugs, carpets, utility appliances, heating and refrigerating units, etc.

2. Specifically, 23 members reside in Georgia, 1 in South Carolina, 1 in Tennessee, 2 in Pennsylvania, and 22 in California.

3. The charges shown in the schedule are based on a study made by Pierson-Corn which estimated the cost of round-trip transportation between Coop's two terminals. Coop's shipper-members shipping merchandise jointly pay a charge sufficient to cover the estimated expenses

property damage insurance, and it insures all the merchandise it transports. Coop pays all its expenses, and receives and accounts for all revenues in its corporate name.

Coop's books of account, its records of merchandise it has transported, and all of its office work are prepared and maintained by Pierson-Corn [4] under a written contract the terms of which call for Coop to pay Pierson-Corn thirty cents for each one-hundred pounds of merchandise which Coop transports for its shipper-members.

Neither Coop nor Pierson-Corn held a certificate, permit, or any other authority from the Commission to transport property in interstate commerce.

The Commission alleged that Coop's transportation activities have been and are those of a contract carrier by motor within the meaning of § 203(a) (15) of the Act; and that since Pierson-Corn is participating in Coop's violations, the Commission is entitled to an injunction against both Coop and Pierson-Corn. The district court agreed, and it entered a judgment granting the injunctions sought by the Commission. Coop and Pierson-Corn then brought this timely appeal.

Appellants' single specification of error is that the district court erred, "both in respect to the law and the evidence, in ruling that appellants were 'contract carriers' requiring authorization from the Interstate Commerce Commission."

Appellants contend that Coop is a private carrier within the meaning of § 203 (a) (17) of the Act; and that the district court, in holding otherwise, erred in both fact and law. We believe the district court was correct in both respects and we affirm.

■ Appellants' contention is that the Act, read as a whole, shows that Congress did not intend to include a group or association of shippers acting on a nonprofit basis. Appellants rely primarily upon § 402(c) of the Act and upon Pacific Coast Wholesalers Ass'n v. United States, S.D. Calif.1949, 81 F.Supp. 991, affirmed 338 U.S. 689, 70 S.Ct. 411, 94 L.Ed. 474.

Chapter 13 of the Interstate Commerce Act may be cited as Part IV of the Act (49 U.S.C.A. § 1001). Section 402 (c) of the Act (49 U.S.C.A. § 1002(c) (1)) reads:

"(c) The provisions *of this chapter* shall not be construed to apply (1) to the operations of a shipper, or a group or association of shippers, in consolidating or distributing freight for themselves or for the members thereof, on a nonprofit basis, for the purpose of securing the benefits of carload, truckload, or other volume rates, or (2) to the operations of a warehouseman or other shippers' agent, in consolidating of distributing pool cars, whose services and responsibilities to shippers in connection with such operations are confined to the terminal area in which such operations are performed." (Emphasis added.) (49 U.S.C.A. § 1002(c).)

From the above language, appellants contend:

"The fact that the language just quoted is found in Section 402(c) of the * * * Act relating to freight forwarding rather than to transportation by 'groups or associations of shippers,' nowise detracts from its illumination of *general* legislative intent. [Emphasis added.] There is, of course, no contention that Section 402(c) *directly* [emphasis appellants'] applies to the section under which this proceeding is brought [i. e., § 209(a) of the Act, Chapter 8, Part II; 49 U.S.C. § 309(a)]; it is, however, claimed that the lan-

---

of the shipment. The money paid to Coop by its shipper-members is deposited in a "trust for members." After a trip is completed, and its actual cost is known, the shipper-member's account with Coop is credited or debited to meet the actual cost.

4. A California corporation with its principal place of business in Los Angeles, California.

guage there [in § 402(c)] used indicates a clear intent that shippers may safely engage in such cooperative, nonprofit operations without running afoul with [the Commission]." (Rep.Br. 5.)

We cannot agree. That appellants' contention is without merit is shown by the specific language in § 402(a) (5) and 402(c).

Section 402(a) (5) [5] says that a "freight forwarder",

"means any person which *(otherwise than as a carrier* subject to chapter[s] 1, 8, or 12 of this title) holds itself out to the general public as a common carrier \* \* \* and (C) utilizes, for whole or any part of the transportation of such shipments, the services of a carrier or carriers subject to chapters 1, 8, or 12 of this title." [6] (Emphasis added.)

Thus, to be a freight forwarder—the subject of Chapter 13—one cannot be a carrier subject to Chapter 8 (Part II of the Act; "Motor Carriers") and to be a freight forwarder within Chapter 13 one must utilize the services of carriers subject to Chapter 8.

Furthermore, § 402(c), supra, specifically exempts from Chapter 13 *only* an "association of shippers \* \* \* consolidating or distributing freight for \* \* \* members \* \* \* on a nonprofit basis, for the purpose of securing the benefits of \* \* \* volume rates \* \* \*." Thus the exemption is restricted to an association of freight forwarders; it does not extend to an association of carriers.

■ Appellants would have this court believe that what is good for freight forwarders is good for motor carriers. This is not necessarily so. Freight forwarders and motor carriers are not the same. United States v. Chicago Heights Trucking Co., 1940, 310 U.S. 344, 60 S.Ct. 931,

84 L.Ed. 1243; Acme Fast Freight, Inc. v. United States, S.D.N.Y.1940, 30 F. Supp. 968, affirmed, 309 U.S. 638, 60 S.Ct. 810, 84 L.Ed. 993. A freight forwarder is one who *hires* independent common or contract carriers. Ibid.

Appellants rest their other foot on Pacific Coast Wholesalers Ass'n v. United States, supra. The case gives appellants no more support than does the statute. (1) Pacific Coast Wholesalers was brought under § 402(c) (1) of the Act; the case at bar was brought under §§ 206(a) and 209(a) of the Act. (2) In Pacific Coast Wholesalers the issue was whether the association was subject to Commission regulation as a freight forwarder or was exempt from Commission regulation under the exemption given in § 402(c) (1); in the case at bar the issue is whether Coop is subject to Commission regulations as a contract carrier by motor vehicle or is exempt from Commission regulation under the exemption given to a private carrier. (3) In Pacific Coast Wholesalers the association at no time transported property over the public highways; in the case at bar Coop did and does transport property over the public highways. We conclude Pacific Coast Wholesalers Ass'n v. United States, supra, is inapposite.

■ Having concluded that appellants' contention cannot stand on the authorities they cite, was the district court correct in holding appellants guilty of a violation of § 209(a) of the Act? We hold the district court was correct.

Section 209(a) of the Act reads in pertinent part:

"§ 209. Contract carriers by motor vehicle

"(a) \* \* \*

"(1) \* \* \* *no person* shall engage in the business of a contract carrier by motor vehicle in interstate or foreign commerce on any public highway \* \* \* unless

---

5.  49 U.S.C.A. § 1002(a) (5).

6.  Chapter 1, "Railroad and Pipe Line Carriers"; Chapter 8, "Motor Carriers"; Chapter 12, "Water Carriers"; Chapter 13, "Freight Forwarders".

there is in force with respect to such carrier a permit issued by the Commission, authorizing such person to engage in such business * * *." (49 U.S.C.A. § 309(a) (1).)[7]

The evidence supports the findings that Coop falls within the term "any person" as defined by the Act. And if Coop is included within the term "contract carrier by motor vehicle," it cannot be a "private carrier of property by motor vehicle."[8] This brings us to the crux of appellants' argument.

■ Appellants contend that Coop is not a contract carrier because it does not perform its services "for compensation;" i. e., it is a nonprofit association and, therefore, is not compensated within the meaning of Part II of the Act. This contention is answered by the case of Schenley Distillers Corporation v. United States, D.C.Del.1945, 61 F.Supp. 981, affirmed, 326 U.S. 432, 66 S.Ct. 247, 90 L.Ed. 181, where Judge Maris, speaking for the court, said:

"The Commission found that Motor Division engaged in the transportation by motor vehicle of property in interstate commerce for compensation. Thus all the elements entering into the definition of a contract carrier were found to exist in the operations of Motor Division. The contention is made that as to at least one of these fact findings the Com-

mission was in error. The plaintiffs urged that Motor Division does not conduct its business 'for compensation', that implicit in 'compensation' is a profit motive and that this is completely absent in the case of Motor Division. We do not agree that 'compensation' as used in the statutory definition, necessarily involves an element of profit. On the contrary it may under some circumstances involve merely reimbursement for expenses of operation." (61 F.Supp. at 987–988.)

The district court here found that Coop was reimbursed for its services. What was said in Schenley is equally applicable here: Coop engaged in the transportation of property for compensation. The evidence in the case at bar supports the district court's finding that Coop performed its transportation services "for compensation."

■■ Appellants would also have this court disregard Coop as a corporate entity. Under the circumstances, this cannot be done. The Supreme Court, in its per curiam affirmance in the Schenley case, said:

"We think the district court was plainly right in upholding the commission's decision that appellant's proposed operations would constitute it a 'contract' rather than a 'private' carrier. Appellant's contention

---

**7.** "Any person" as used in Part II of the Act "means *any* individual, firm, co-partnership, *corporation*, company, *association, or joint-stock association;* and includes any trustee, receiver, assignee, or personal representative thereof." (Emphasis added.) (§ 203(a) (1) of the Act; 49 U.S.C.A. § 303(a) (1).)

"The term 'contract carrier by motor vehicle' means *any person* which engages in transportation by motor vehicle of passengers or property in interstate or foreign commerce, *for compensation* * * *, under continuing contracts which one person or a limited number of persons either (a) for the furnishing of transportation services through the assignment of motor vehicles for a continuing period of time to the exclusive use of each person served or (b) for the furnishing of

transportation services designed to meet the distinct need of each individual customer." (Emphasis added.) (§ 203(a) (15) of the Act; 49 U.S.C.A. § 303(a) (15).)

And, "the term 'private carrier of property by motor vehicle' means *any person* not included in the terms 'common carrier by motor vehicle' or *'contract carrier by motor vehicle',* who or which transports in interstate or foreign commerce by motor vehicle property of which such person is the owner, lessee, or bailee, when such transportation is for the purpose of sale, lease, rent, or bailment, or in furtherance of any commercial enterprise." (Emphasis added.) (§ 203(a) (17) of the Act; 49 U.S.C.A. § 303(a) (17).)

**8.** See footnote 9, infra.

to the contrary is based on the fact that its operations were to be performed for its parent and for other corporations owned or controlled by the parent. Appellant says that the transportation will be in furtherance of one 'commercial enterprise' within the meaning of Section 203(a) (17). But that section applies only to the extent to which § 203(a) (15) does not,[9] and the evidence supports the commission's finding that the transportation was to be 'for compensation' from appellant's parent and the other corporations controlled by the parent. Appellant urges that we disregard the separate corporate entities which are to pay compensation to appellant for the transportation and treat the corporations controlled by appellant's parent as one single commercial enterprise. While corporate entities may be disregarded where they are made the implement for avoiding a clear legislative purpose, they will not be disregarded where those in control have deliberately adopted the corporate form in order to secure its advantages and where no violence to the legislative purpose is done by treating the corporate entity as a separate legal person. One who has created a corporate arrangement, chosen as a means of carrying out his business purposes, does not have the choice of disregarding the corporate entity in order to avoid the obligations which the statute lays upon it for the protection of the public." (326 U.S. at 436–437, 66 S.Ct. at 249.)

The Commission does not (nor does this decision) quarrel with a person's right to transport his own merchandise. (E. g., I. C. C. v. Tank Car Oil Corp., 5 Cir. 1945, 151 F.2d 834; I. C. C. v. Clayton, 10 Cir. 1942, 127 F.2d 967; and Taylor v. I. C. C., 9 Cir. 1953, 209 F.2d 353.) Nor does the Commission quarrel with this court's decision in Pacific Coast Wholesalers Ass'n v. United States, supra. What the Commission does contend is that these cases are not in point and that the facts of this case show that Coop is a contract carrier within the meaning of Part II of the Act. The district court agreed with the Commission. We agree with the district court.

Affirmed.

---

9. This language shows that a person within the definition of a "contract carrier" cannot be a "private carrier."