**KELLER INDUSTRIES, INC., et al.,
Plaintiffs,**

v.

**UNITED STATES of America and Interstate Commerce Commission,
Defendants.**

**Civ. A. No. 1414.**

United States District Court,
N. D. Florida,
Tallahassee Division.

March 30, 1970.

See also D.C., 304 F.Supp. 852.

---

Prunty, Olsen & Slotnick, Miami, Fla., for plaintiffs.

Clinton Ashmore, U. S. Atty., Tallahassee, Fla., for defendant.

William P. Jackson, Jr., Washington D. C., and W. Dexter Douglass, Tallahassee, Fla., for Contract Carrier Conf. etc.

Raymond M. Zimmet, General Counsel, Washington, D. C., for Interstate Commerce Commission.

Bryce Rea, Jr., and Thomas M. Knebel, Washington, D. C., for intervening defendants National Motor Freight Traffic Assn., Common Carrier Conference.

JUDGMENT

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

MIDDLEBROOKS, District Judge.

This action to enjoin, set aside, and annul reports and orders of the Interstate Commerce Commission, having come on for hearing on March 6, 1970, before this Court, and the Court having received in evidence a certified copy of the record of the proceedings before the Commission, now, after reviewing said record in its entirety and after hearing the oral arguments of counsel for the respective parties, and after consideration of said arguments and of the briefs of counsel, this Court makes and enters the following findings of fact and conclusions of Law:

Plaintiffs are corporations or concerns doing business in the State of Florida as manufacturers, distributors, suppliers, or wholesalers, and are also engaged in certain interstate motor operations which will be described in detail hereafter. Defendants are the United States of America and the Interstate Commerce Commission (the Commission). Intervening defendants are the National Motor Freight Traffic Association, Inc., Regular Common Carrier Conference and Common Carrier Conference—Irregular Route, Contract Carrier Conference and the Florida Public Service Commission. Intervening defendants are parties in interest who appeared in the Commission's proceedings that are under review in this action.

This action, brought under 28 U.S.C., Sections 1336(b) and (c), 1398(b), seeks to enjoin, set aside and annul reports and orders of the Commission served January 24, 1967, and April 15, 1968, in its Docket Nos. MC–C–4937, and MC–C–4937 (Sub-No. 1), Keller Industries, Inc. —Declaratory Order, 103 M.C.C. 520 (1967), aff'd, 107 M.C.C. 75 (1968). The proceedings before the Commission were instituted on October 21, 1965, when plaintiffs filed petitions with the Commission requesting it to determine

whether their joint motor operations were subject to economic regulation under the Interstate Commerce Act. Those petitions were filed to comply with the order of this Court entered in the consolidated Civil Actions Nos. 1098 and 1103, Keller Industries, Inc. v. Edwin L. Mason et al.

Civil Action Nos. 1098 and 1103 are suits to enjoin the members of the Public Service Commission of Florida from obstructing plaintiffs in the performance of the motor transportation of property in interstate commerce to and from Florida by causing the arrest of the drivers of the vehicles employed in such transportation for failure to have secured from the Public Service Commission a certificate of registration evidencing that plaintiffs hold authority from the Interstate Commerce Commission to perform such transportation. This Court granted a preliminary injunction conditioned upon plaintiffs referring to the Interstate Commerce Commission for initial determination the issue whether their operations were for-hire transportation subject to economic regulation by the Interstate Commerce Commission or private carriage exempt from such regulation.

The undisputed facts developed before the Commission establish that in January 1965, one E. N. Cook approached one of the plaintiffs, Keller Industries, Inc. (Keller), a manufacturer of aluminum products in Miami, Florida, with a plan designed (1) to allow Keller to transport by truck its own goods in interstate commerce northward from Miami to various destinations; and (2) to permit other business concerns unrelated to Keller to utilize the same truck and driver, once Keller completed its transportation northward, to haul their goods southward toward Miami. The plan was implemented by Keller's hiring of Cook as its traffic coordinator, responsible both for soliciting the participation of other business concerns in these joint motor operations, and arranging for the leasing of trucks and the hiring of drivers to effectuate such operations.

The arrangement is as follows: At the instance of Keller, it and the other plaintiffs enter into joint venture agreements. Each agreement provides for the transportation of Keller's products outbound from Miami and the transportation of one of the other plaintiffs' products inbound to Miami or its environs. Each joint venturer bears the cost of the movement of its own goods from origin to destination. The cost of the movement of the truck empty from the destination of Keller's goods to the origin of its joint venturer's goods is allocated between them by mutual agreement. Keller arranges for the lease of a truck from a truck rental agency, the lessee being Keller and one of the other plaintiffs jointly. Keller and its joint lessee each pay the lessor directly the share of the total rent allocated to each. Keller also arranges to procure a driver from a drivers' association to move the truck loaded with Keller's goods from Miami to their destination, and for the pick up of the goods of one of the other plaintiffs and the movement of them back to Miami. The driver becomes the employee of Keller for that portion of the round trip allocated to Keller and the employee of the other plaintiff for the portion of the round trip allocated to it. Keller and the other plaintiff each pay the driver's wages, as well as social security and workmen's compensation taxes for the portion of the round trip allocated to each, and each withholds federal income taxes from the wages each pays.

The question before the Commission was whether, under this arrangement, the plaintiffs were carrying their own goods and furnishing their own motor transportation in private carriage, exempt from economic regulation under the Interstate Commerce Act, 49 U.S.C., Section 303(a) (17), or instead were providing "transportation * * * for compensation," 49 U.S.C., Sections 303 (a) (14) and (15), or "for-hire transportation," 49 U.S.C., Section 303(c), for each other, subject to economic regulation under the Act.

Division 1 of the Commission, comprised of three members, decided by a split vote of 2–1 that plaintiffs' joint operations constituted for-hire motor carriage for which appropriate operating authority was required from the Commission. Keller Industries, Inc.—Declaratory Order, 103 M.C.C. 520 (1967). It found that plaintiffs jointly were providing transportation for "compensation" for each other within the meaning of the Interstate Commerce Act, as consistently held by the Commission and the federal courts (103 M.C.C. at 527, 529–30), the compensation being the reduction in costs each plaintiff enjoys by virtue of the fact that each is relieved by another of the cost of returning an empty truck to the point of origin of its goods. Relying on United States v. Drum, 368 U.S. 370, 82 S.Ct. 408, 7 L.Ed.2d 360 (1962) Division 1 held that the plaintiffs, under their arrangement, have so far divested themselves of the characteristic burdens of transportation as to render the sanctioning of their operations as private carriage a departure from the statutory design.

It having been determined that the proceedings involved an issue of general transportation importance, the entire Commission reviewed the decision of Division 1. The Commission, one member concurring in part and three dissenting, affirmed and adopted as its own the findings, conclusions and rationale of Division 1. Keller Industries, Inc.—Declaratory Order, 107 M.C.C. 75, 76 (1968). In addition, the Commission found that the active solicitation of the other plaintiffs by Keller, which solicitation is an essential hallmark of for-hire carriage, was "completely irreconcilable with the private carriage concept envisioned by the statutory scheme of regulation," and resulted in all of the plaintiffs "providing for-hire transportation for each other." (107 M.C.C. at 78).

The entire Commission further concluded that if plaintiffs' motor operations went unchecked, they would "inevitably present opportunities for unfair and destructive competitive practices" that could obliterate "any meaningful distinction between private and for-hire carriage, all to the detriment of the overall objectives of regulation." (107 M.C.C. at 78).

The Commission thereupon discontinued its proceedings and forwarded a certified copy of its reports and orders to this Court, which having referred the matter to the Commission has exclusive jurisdiction to review its reports and orders resulting from that referral. 28 U.S.C., Sections 1336(b) and (c), 1398 (b) and Keller Industries, Inc. et al. v. United States of America and Interstate Commerce Commission, 304 F.Supp. 852 (N.D.Fla.1969), in which a three judge court convened at the instance of plaintiffs to hear this action remanded it to this Court for disposition. The scope of review is limited. The Commission's reports and orders "should not be set aside, modified, or disturbed on review by a Court if they lie within the scope of the Commission's statutory authority, if they are based upon adequate findings, and if they are supported by substantial evidence." Allen v. United States, 187 F.Supp. 625, 627 (S.D.Fla. 1960). See also Illinois Cent. R. R. v. Norfolk & W. Ry., 385 U.S. 57, 69, 87 S.Ct. 255, 17 L.Ed.2d 162 (1966); Consolo v. Federal Maritime Commission, 383 U.S. 607, 619–621, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966); United States v. Pierce Auto Freight Lines, Inc., 327 U.S. 515, 534–536, 66 S.Ct. 687, 90 L.Ed. 821 (1946); Rochester Telephone Corp. v. United States, 307 U.S. 125, 139, 59 S.Ct. 754, 83 L.Ed. 1147 (1939). Nor are the Courts concerned with the correctness of the Commission's reasoning or with the consistency or inconsistency of its decisions. Virginian Ry. v. United States, 272 U.S. 658, 663–666, 47 S.Ct. 222, 71 L.Ed. 463 (1926); McKenzie Tank Lines, Inc. v. United States, 211 F.Supp. 876, 878 (N.D.Fla.1962); and Allen v. United States, 187 F.Supp. 625, 626–627 (S.D.Fla.1960). In essence, the judicial function is exhausted when there is found to be warrant in the law

and a rational basis for the conclusions reached by the Commission. Mississippi Valley Barge Line Co. v. United States, 292 U.S. 282, 286–287, 54 S.Ct. 692, 78 L.Ed. 1260 (1934).

These principles are apposite here. *Drum* points out that the result of unregulated for-hire motor carriage performed under the guise of private carriage will be diversion of traffic from, and injury to, regulated for-hire motor carriers upon whom the bulk of the shipping public must depend to get their goods to market. (368 U.S. at 373–375, 82 S.Ct. 408). Hence, *Drum* holds, the definitions in the Act must, if they are to serve their purposes, impose practical limitations upon unregulated competition in a regulated industry, and are therefore to be interpreted in a manner which transcends the merely formal. (368 U.S. 375, 82 S.Ct. 408). Accordingly, *Drum* further holds that it is for the Commission to decide whether a particular arrangement "gives rise to that 'for-hire' carriage which is subject to economic regulation in the public interest or whether it is in fact private carriage as to which Congress determined that the shipper's interest in carrying his own goods should prevail." (368 U.S. at 374, 82 S.Ct. at 410).

Because the facts in this case are not in dispute, the issue before this Court is whether the Commission rationally concluded from those facts, in accordance with the applicable law, that plaintiffs are operating as interstate motor carriers for compensation, without possessing the requisite licenses therefor from the Commission. This Court agrees with the Commission that, viewing plaintiffs' operations and arrangements in their totality as *Drum* requires, plaintiffs are operating as interstate motor carriers for compensation without license from the Commission. This Court therefor affirms the reports and orders of the Commission under review.

Generally, all motor carriers engaged in interstate commerce are subject to economic regulation under Part II of the Interstate Commerce Act, 49 U.S.C., Sections 301–327, and generally a certificate of public convenience and necessity as a common carrier, 49 U.S.C., Sections 306, 307, or a permit as a contract carrier, 49 U.S.C., Section 309, issued by the Commission is a prerequisite for any interstate motor operations. One of the exceptions to this general rule is that one may transport his own goods as a "private carrier of property by motor vehicle" in furtherance of his own primary business, unless that business is transportation, free of economic regulation by the Commission. 49 U.S.C., Sections 303 (a) (17), 303(c). As an exception or exemption from an Act which is highly remedial, Crescent Express Lines, Inc. v. United States, 320 U.S. 401, 409, 64 S.Ct. 167, 88 L.Ed. 127 (1943); McDonald v. Thompson, 305 U.S. 263, 266, 59 S.Ct. 176, 83 L.Ed. 164 (1938), the term "private carrier of property by motor vehicle" is narrowly construed. Georgia Truck System, Inc. v. Interstate Commerce Commission, 123 F.2d 210, 212 (5th Cir. 1941); Calvine Mills, Inc. v. United States, 221 F.Supp. 1019, 1022 (D.N.J.1963); Interstate Commerce Commission v. Gannoe, 100 F.Supp. 790, 794 (W.D.Pa.1951).

The plaintiffs' practice of jointly leasing a truck, hiring a driver, and prorating the transportation expenses among themselves, is neither novel nor unusual. Such practices have been considered by the Commission on several occasions, and it has consistently held that when individual shippers enter into such joint arrangements, and then separately use the truck and driver to transport the goods of one of them outbound and the goods of the other inbound, they provide "compensation" for each other within the meaning of the Interstate Commerce Act by reducing each other's transportation expenses, and thereby perform for-hire rather than private carriage. Heavy Equipment Rental Co., Investigation, 98 M.C.C. 365, 393–394, 397–399 (1964); American Equipment Rental, Inc., Investigation, 96 M.C.C. 383, 385 (1964); Allen—Investigation

of Operations and Practices, 79 M.C.C. 727, 732–733, 736–738 (1959); Equipment Rental, Inc.—Investigation of Operations, 71 M.C.C. 311, 312–313, 316–317 (1957); Southern Fruit Distributors, Inc., Contract Carrier Application, 31 M.C.C. 771, 773, 775–777 (1942); Cf. Lukens Steel Co., Contract Carrier Application, 42 M.C.C. 672, 674–675 (1943); Enterprise Trucking Corp., Contract Carrier Application, 27 M.C.C. 264, 267 (1941).

The first three Commission decisions cited above were sustained by federal three judge district courts in Florida. Heavy Equipment Rental Co. v. United States (64–804–Civ.–EC, S.D.Fla., Jan. 24, 1966) (unreported per curiam order); American Equipment Rental, Inc. v. United States (65–241–Civ.–EC, S.D. Fla., Aug. 16, 1965) (unreported per curiam order; Allen v. United States, 187 F.Supp. 625, 627, 629–630 (S.D.Fla. 1960). And the Commission's interpretation of the term "compensation," as defined above, has been upheld by other federal courts as well. Schenley Distillers Corp. v. United States, 61 F.Supp. 981, 987–988 (D.Del.1945), aff'd 326 U.S. 432, 436–437, 66 S.Ct. 247, 90 L.Ed. 181 (1946); Shippers Cooperative, Inc., et al. v. Interstate Commerce Commission, 308 F.2d 888, 892 (9th Cir., 1962); Studna v. United States, 225 F.Supp. 973, 983–984 (W.D.Mo.1964).

These cases make plain that had plaintiffs established a separate and distinct legal entity to perform their transportation the operations would be for-hire carriage. This would be true even though the separate entity received no payment other than reimbursement for the actual expenses of operation. Illustrative is Shippers Cooperative, Inc. v. Interstate Commerce Commission, supra. In that case a group of shippers in Georgia, South Carolina and Tennessee and a group of shippers in California banded together as a nonprofit corporate association to ship their goods collectively in order to reduce their transportation costs. The cooperative transported the goods of its members in the south to California and the goods of its members in California to the south. Each member paid its prorata share of the actual cost of each round trip in which his goods moved. Upon suit by the Commission the District Court enjoined the operation. Interstate Commerce Commission v. Shippers Cooperative, Inc., et al., 196 F.Supp. 8 (S.D.Cal.1961). The Court of Appeals affirmed. It held that the cooperative was a "person" as defined in Section 203(a) (1) of the Interstate Commerce Act, 49 U.S.C. § 303 (a) (1), and that transportation for compensation was being performed. (308 F.2d at 892).

The only difference between the arrangement and operations in *Shippers Cooperative* and those here is that plaintiffs have not created by legal document a separate and distinct legal entity by which to perform their transportation. Plaintiffs contend that this fact renders that case and the others cited above inapposite. This Court rejects the contention. Cf. Timken Roller Bearing Co. v. United States, 341 U.S. 593, 598, 71 S.Ct. 971, 95 L.Ed. 1199 (1951). With exceptions not here relevant, Section 203(c) of the Act, 49 U.S.C. § 303(c), forbids any "person" to engage in "any for-hire transportation business by motor vehicle, in interstate or foreign commerce" without authority from the Commission. As the Court pointed out in *Shippers Cooperative*, Section 203(a) (1) of the Act, 49 U.S.C. § 303(a) (1), defines the word "person" to mean "any individual, firm, copartnership, corporation, company, association or joint stock association; * * *" (308 F.2d at 892 n. 7). This broad definition clearly embraces plaintiffs as joint venturers acting under arrangements which they themselves characterize as joint venture agreements. Had the Congress intended to limit the meaning of the word "person" to an individual or a separate and distinct legal entity such as a corporation, it would not have used words such as "firm", "copartnership", "company" or "association", all of which describe means created for collective action which fall short

of the creation of a legal entity. Hence, plaintiffs' joint venture agreements make them, as parties thereto, a single, albeit collective, person within the meaning of the Act. As a single person the parties to each joint venture agreement are engaged in the for-hire transportation business just as was the cooperative in *Shippers Cooperative*.

As the Commission held in *Equipment Rental, Inc., supra*, 71 M.C.C. at 316, variations in the legal relations among the parties are not determinative of the nature of their operations. And as it held in *Allen, supra,* a decision affirmed by the District Court for the Southern District of Florida, those acting in concert to provide a transportation service for compensation "constitute a single person within the meaning of the act, and all are as responsible for violating the provisions thereof as if each had conducted the entire operation separately and individually." (79 M.C.C. at 738). In short, as the Supreme Court said in Drum, "the definitions [in the act] are to be interpreted in a manner which transcends the merely formal." (368 U. S. at 375, 82 S.Ct. at 411).

Plaintiffs' argument that this case should be controlled by Red Ball Motor Freight, Inc. v. Shannon, 377 U.S. 311, 84 S.Ct. 1260, 12 L.Ed.2d 341 (1964), and Interstate Commerce Commission v. Piedmont Sales Co., 16 Fed.Carr.Cases Para. 81,623 (N.D.Ga.1963), aff'd, 330 F.2d 351 (5th Cir. 1964), is not persuasive. *Shannon* dealt with another aspect of the problem of distinguishing between private and for-hire motor carriage, namely, so-called spurious "buy-sell" arrangements (377 U.S. at 313–314, 84 S.Ct. 1260), which are not present in any manner in the instant case. *Piedmont* dealt only with the narrow question whether a business concern had in fact leased its trucks to other shippers to carry their own goods or whether it was itself performing transportation for them. Neither of those cases was concerned with the issue here, which is whether individual business concerns, through joint arrangements, are provid-

ing for-hire motor transportation for each other.

It is therefore

Ordered and adjudged that the reports and orders of the Commission are affirmed, the complaint is dismissed and the relief requested therein is denied.